**No. 57383.**—Leghorn Trading Co., Inc. v. United States, protests 175469–K and 174156–K (New York).

JOHNSON, Judge: The merchandise in this case consists of secondhand drums of 55 gallons' capacity, imported as containers of a solidified olive oil soapstock. Protest 175469–K covers 258 drums which were assessed for duty under paragraph 328 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, T. D. 52373, supplemented by Presidential proclamation, T. D. 52423, at the rate of 12½ per centum ad valorem. Protest 174156–K covers 233 drums which were assessed at 25 per centum ad valorem under paragraph 328. The provisions of the act in question, so far as applicable, are as follows:

PAR. 328 * * * cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; * * * 25 per centum ad valorem; * * *.

[T. D. 52423, effective March 9, 1950, reduced the rate to 12½ per centum ad valorem.]

The plaintiff claims that the drums are "one-time shippers," not reusable as containers, and properly free of duty as the usual containers of a specific-duty merchandise.

At the trial, the president of the plaintiff testified that the firm imported oils, fats, and chemicals; that these particular drums were delivered to the premises of the purchaser; and that he personally observed the removal of the contents of 15 of these drums by cutting out the heads by means of a hammer and chisel and also by a device similar to a can opener. The reason he witnessed the removal of the contents from these drums was that the buyer had asked him to suggest the best method of removing the solidified soapstock from the drums. He testified that it was impossible to remove the contents without destroying the drums because the screw top and the screw opening on the side were small, and it would mean subjecting the drum to a very high steam pressure to melt the soapstock and that such a method would not have been commercially feasible. He also testified that all of the drums contained the same merchandise as the ones he observed being opened.

The witness had been dealing in drums for 25 or 30 years, and in his opinion there would be no practical use for the drums after the removal of the contents.

He stated that he was a buyer of drums and seller of secondhand drums for such period. With such experience, he certainly was qualified to testify whether or not such drums, after being emptied by removing the heads, were of any commercial value.

On cross-examination, the witness further testified that the drums when received were dented and rusted and generally a very bad lot of drums and below average in condition. He testified, however, that it was only exceptional when heads have to be cut off, that occurring only when the contents are solidified; and that usually, in the case of solidified soapstock, the containers consist of sugar barrels. The witness further testified that he had never seen drums, similar in condition to the drums in question after the removal of the heads, used as containers of merchandise.

The papers with protest 174156–K disclose that the 233 drums covered thereby had been examined at the premises of the Conti Products by the customs officials and found with "heads cut off & holes in bottom." These drums were returned as "N. C. V.," meaning no commercial value.

This court has decided many cases quite similar to the pending case. In *Campbell* v. *United States*, Abstract 4888, certain drums used as containers of perchlorate of potash were claimed free as usual containers. Upon evidence that it was necessary to destroy the drums in order to remove the contents, the protest was sustained. *Columbia Naval Stores Co.* v. *United States*, Abstract 6925, involved an importation of drums containing Polish pine tar. The evidence disclosed that this pine tar was of the consistency of molasses, and to empty the drums, either heat was necessary or the heads of the drums were knocked out. Upon such evidence, the protest was sustained. In *Mailliard & Schmiedell* v. *United States*, Abstract 8450, certain drums containing chloride of calcium, sodium bisulphite, and magnesium chloride were held entitled to free entry upon evidence that the contents could not be removed without chopping off the tops, that the tops could not be replaced, and that the drums were discarded as worthless. See also *Archer Rubber Co.* v. *United States*, Abstract 38363; *Wm. A. Foster* v. *United States*, 68 Treas. Dec. 384, T. D. 47922; *General Aniline Works, Inc.* v. *United States*, 72 Treas. Dec. 727, T. D. 49291.

In the case of *Philipp Bros., Inc.* v. *United States*, 12 Cust. Ct. 266, Abstract 49239, the drums contained tantalum ore and were of a 50-gallon capacity, composed of light sheet metal. In removing the contents, the heads were chopped off and some chopped lengthwise. The drums were discarded as useless and were thrown on the dump. A junk dealer picked the drums off the dump and testified that although he was able to use some of the drums to ship scrap brass to a dealer, they were only valuable as junk, and he did not pay anything for them. The court found not only were the drums, when imported, in a condition precluding their commercial use after removal of the contents, but that it was not feasible to remove the contents in any other manner than chopping off the heads. The fact that the junk dealer was able to use some of the drums for the purpose of shipping them filled with other junk to another junk dealer was not sufficient to establish that such headless, and otherwise damaged, drums were capable of competing with American-made drums for the transportation of such merchandise as is usually transported in iron drums. See also *American Cyanamid Company* v. *United States*, 26 Cust. Ct. 320, Abstract 55071, and cases therein cited.

From the evidence before the court, the drums in question would appear to be in the same category as the foregoing cases. Judgment will therefore be entered in favor of the plaintiff directing the collector to reliquidate the entries and return all duties taken upon said drums.